IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN TYLER HERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV 21-1038-R |
| | ) | |
| SIG SAUER INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 71], Defendant's Motion to Exclude Causation Evidence and Opinions of Plaintiff's Expert William Vigilante [Doc. No. 73], and Defendant's Motion to Exclude Causation Evidence and Opinions of Plaintiff's Expert James Tertin [Doc. No. 74]. Each motion is fully briefed [Doc. Nos. 77, 78, 79, 71, 81, 82, 83] and at issue. A hearing was held on August 24, 2023 at which the Court heard arguments of counsel regarding whether the experts' causation opinions should be excluded [Doc. No. 89]. After considering all the submissions and the arguments of counsel, the Court finds as follows.

## INTRODUCTION

Plaintiff was seriously injured when his Sig Sauer P320 handgun unintentionally discharged while he was trying to remove his holster. Plaintiff asserts claims for strict products liability, negligence, breach of the implied warranty of merchantability, breach of express warranty, negligent infliction of emotional distress, and intentional infliction of

emotional distress against Defendant Sig Sauer, the manufacturer of the gun. *See* Compl. [Doc. No. 1].

In support of these claims, Plaintiff offers expert testimony from James Tertin, a gunsmith, and William Vigilante, a human factors engineer. The version of the P320 involved in this case does not come with an external manual safety, such as a tabbed trigger or a thumb safety. Mr. Tertin and Mr. Vigilante both opine that the failure to incorporate a manual safety into the P320 caused Plaintiff's injuries. Defendant seeks to exclude these causation opinions under Fed. R. Evid. 702. Defendant also moves for summary judgment, arguing that Plaintiff's claims necessarily fail without admissible evidence of causation.

## FACTUAL BACKGROUND

Plaintiff was trying on a new soft leather holster with his loaded Sig Sauer P320 handgun in the holster. Depo of Plaintiff [Doc. No. 77-2] at 60:2-7. When he tried to remove the holster, the gun discharged into his groin, causing him severe injuries. The police officer who interviewed Plaintiff immediately following the incident included the following description in his report:

> [Plaintiff] stated he was trying to pull the gun and holster out of his waistband and the holster got hung up. [Plaintiff] stated he then pulled harder causing the pistol to come out of the holster and [Plaintiff's] finger accidentally to pull the trigger causing the firearm to discharge.

Def. Ex. 1-2 [Doc. No. 71-1]. At his deposition, Plaintiff offered the following account of the incident:

> So that morning I got up, took the holster out of the pouch, and then put the gun in the holster. Then I unbuttoned my pants, put the holster with the gun already in it on my waistband, then I just buttoned my pants. Very quickly I decided I didn't like it in the front. It was uncomfortable, and I wasn't

2

comfortable with a gun with a chamber -- a chambered gun just in the front, in general.

So then I went to -- reached over the gun to grab the holster, and I pulled, and it kind of got caught up, so I pulled a little harder on the holster, and just when I pulled up, that's when -- all I remember, it just went off, and then I remember falling on the ground and yelling or kind of screaming a little bit.

Depo of Plaintiff at 60:12-61:2. He later described himself as "reach[ing] over the gun" and "grabb[ing] the whole holster to take it out as one unit." *Id.* at 72:6-8. He further explained that his "hand was only on the holster on this side, and then my finger, the pointer finger, I just kind of lifted up on that clip a little bit for the holster and I pulled like that." *Id.* at 72:10-14.

At the time Plaintiff purchased his P320, Sig Sauer offered versions with and without a manual thumb safety. Def.'s Statement of Fact ¶ 12. When asked if he had a preference for carrying a gun with a manual safety, Plaintiff responded no. Depo of Plaintiff at 43:19-44:4. He further testified that a manual safety was "not something I was even thinking about." *Id.*

Plaintiff's experts opine that the P320 is defectively designed because it has a short single action trigger pull without a manual safety, making it too easy for the trigger to be accidentally actuated. Tertin Report [Doc. No. 74-6] ¶ 9; Vigilante Report [Doc. No. 73-6] ¶¶ 2, 6; Pl.'s Counter-Statement of Fact ¶ 7. Neither expert opines that the P320 can fire without a trigger pull. Pl.'s Resp. to Def.'s Statement of Fact ¶ 20. An external manual safety can include either a tabbed trigger or a thumb safety. Depo of Tertin [Doc. No. 71-1] 81:22-82:25. A tabbed trigger is "a small tab within the trigger that must be depressed for the trigger to be able to fully depress and fire the weapon." Tertin Report at 16. Mr.

Tertin, Plaintiff's firearms expert, opines that a tabbed trigger is able to effectively prevent accidental discharges because it requires a user's finger to be placed squarely on the center of the trigger. *Id.* A thumb safety is "a switch on the side of the pistol that can be flipped on or off with the user's thumb" and which prevents the trigger from being actuated when it is on. *Id.* at 14. Plaintiff's experts both opine that the accident would most likely not have occurred if the gun were equipped with a manual safety. Tertin Report ¶¶ 14, 14-16; Vigilante Report ¶¶ 13-14.

## DISCUSSION

### A. Motions to Exclude Expert Testimony

#### 1. Standard

Rule 702 governs the admissibility of expert testimony and "imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). To determine whether an expert opinion is admissible pursuant to Rule 702, courts utilize a two-step analysis. *103 Invs. I, L.P. v. Square D Co.,* 470 F.3d 985, 990 (10th Cir. 2006). First, the Court determines "whether the expert is qualified by 'knowledge, skill, experience, training or education' to render an opinion." *Id.* (quoting Fed. R. Evid. 702). Second, if the expert is qualified, the Court determines whether the expert's opinion is reliable under the principles set forth in *Daubert*[1] and *Kumho Tire*,[2] and relevant, in that it will assist the trier of fact. *Id.*; *see also Ralston*, 275 F.3d at 969; Fed. R. Evid. 702.

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[2] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

There are a number of factors that a trial court may consider in determining whether expert testimony is reliable, although the inquiry is necessarily "a flexible one" that is highly fact specific. *Daubert*, 509 U.S. at 594. Ultimately, its purpose "is always 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Goebel v. Denver & Rio Grande W. R. Co*., 346 F.3d 987, 992 (10th Cir. 2003) (quoting *Kumho Tire*, 526 U.S. at 152). Importantly, the "appropriate means of attacking shaky but admissible evidence" is not through exclusion, but through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. The proponent of expert testimony bears the burden of showing that the testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

### 2. Analysis

Defendant does not challenge Mr. Tertin's qualifications to testify as a firearms design expert or Mr. Vigilante's qualifications to testify as a human factors expert. The Court has reviewed their qualifications and finds that they each possess the knowledge, skill, experience, training, or education necessary to render opinions in their respective fields.

Defendant does, however, challenge the reliability of certain opinions offered by both experts. Qualified expert testimony is reliable, and therefore admissible, only when it is "based on sufficient facts or data," it is "the product of reliable principles and methods," and "the expert has reliably applied [those] principles and methods." Fed. R. Evid. 702.

Although this standard does not require absolute certainty on the part of the expert, it does require the proponent to show "that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts that satisfy Rule 702's reliability requirements." *Mitchell v. Gencorp Inc*., 165 F.3d 778, 781 (10th Cir. 1999). Expert testimony that is based on speculation or "is connected to existing data only by the *ipse dixit* of the expert" is generally not admissible. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Kieffer v. Weston Land, Inc*., 90 F.3d 1496, 1499 (10th Cir. 1996) ("An expert opinion must be based on facts that enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation but absolute certainty is not required.") (quotation marks and brackets omitted).

Defendant argues that the causation opinions offered by Mr. Tertin and Mr. Vigilante should be excluded as speculative and lacking a reliable foundation. More specifically, Defendant seeks to exclude Mr. Tertin and Mr. Vigilante from opining that Plaintiff's accident most likely would not have occurred if the gun was equipped with a thumb safety or a tabbed trigger safety. *See* Doc. No. 73 at 1; Doc. No. 74 at 1, 3.

The Court agrees with Defendant that neither Mr. Tertin nor Mr. Vigilante has a reliable factual basis for these particular opinions. Mr. Tertin and Mr. Vigilante acknowledge that a tabbed trigger will not prevent an unintentional discharge if an object squarely contacts the face of the trigger, a thumb safety will not prevent an unintentional discharge if it is not engaged, and the gun will not discharge without the trigger being fully actuated. Depo of Vigilante, Doc. No. 73-5 at 14:6-11, 13:4-12, 32:17-33:2; Depo of Tertin, Doc. No. 74-1 at 10:16-11:4, 89:12-25, 104:4-15, 105:5-17. But neither expert

6

knows what part of the trigger was contacted or whether a thumb safety would have been engaged. Without these critical facts, the experts' conclusion that a tabbed trigger or thumb safety would have prevented the accident is speculative.

Start with Mr. Vigilante. He testified that he does not have an opinion on what part of the trigger was contacted. Depo of Vigilante, Doc. No. 73-5 at 14:16-15:23, 17:5-9. He does not know whether it was pulled, where it was pulled, or what caused it to move. *Id.* The position of the gun in the holster or whether the trigger was accessible at the time of the incident does not matter to him. *Id.* at 19:5-19:13. He has no opinion as to whether Plaintiff's description of the incident is actually what happened.[3] *Id.* at 12:23-13:3. He does not recall Plaintiff's testimony concerning his use of a manual safety. *Id.* at 21:24-22:10. Thus, the specific circumstances surrounding this incident are not important to Mr. Vigilante. Rather, he is basing his causation opinion on his conclusion that, in general, it is unsafe to sell a gun like the P320 without a manual safety. Assuming for the sake of the argument that the P320's failure to include a manual safety is a design defect, it does not necessarily follow that the defect was the cause of Plaintiff's particular accident. Mr. Vigilante does not identify any factual basis for his conclusion that a manual safety would have most likely prevented this incident. As a result, his causation opinion is not sufficiently reliable as applied to the facts of this case.

---

[3] Mr. Vigilante did testify at one point that although he does not know if the trigger was contacted, he "do[es] know that it wasn't a full finger pressed on the front of the trigger." Depo of Vigilante Doc. No. 77-7 at 15:16-23. However, he subsequently testified that he does not have an opinion on what part of the trigger was impacted and was not asked to look at the physical evidence to determine how or if the trigger was pulled *Id.* at 15:24-19:4.

Mr. Tertin's causation opinions are similarly flawed. Mr. Tertin believes that a single action handgun without a manual safety is "inherently unsafe" and it is "common sense" that a tabbed trigger is safer.[4] Depo of Tertin, Doc. No. 74-1 at 34:21-35:3, 51:11-25. From that premise, he leaps to concluding that the lack of a manual safety caused Plaintiff's accident, even though he admits that he has no idea what happened in this incident, performed no analysis as to what may have pulled the trigger, and did not evaluate the rate of unintentional discharges for guns with tabbed triggers. *Id.* at 25:9-13, 55:22-56:17, 84:10-85:10, 103:12-16, 104:7-13, 105:5-16, 112:21-113:11. If Mr. Tertin does not know where the trigger was pulled, whether a thumb safety would have been engaged, or even whether tabbed triggers reduce the rate of unintentional discharges, his conclusion that a manual safety would likely have prevented the accident is simply speculation.  *See Smith v. Sears Roebuck & Co.*, No. CIV-04-1271-HE, 2006 WL 687151, at *4 (W.D. Okla. Mar. 17, 2006), (excluding expert testimony because "[w]hile the reverse mechanism in this case did fail, there is no adequate foundation in Mr. Litwin's report for the conclusion that a design defect, as opposed to other possible factors, actually caused the failure") *aff'd*, 232 F. App'x 780 (10th Cir. 2007).

As Mr. Tertin and Mr. Vigilante recognize, a tabbed trigger would not have prevented Plaintiff's accident if his finger or an object inadvertently pressed the face of the

---

[4] Of course, if Mr. Tertin's opinion is based on nothing more than common sense, it is not the proper subject of expert testimony and is not helpful to the jury. *See Newsome v. Tull*, No. CIV-18-0791-HE, 2019 WL 5197566, at *4, n.4 (W.D. Okla. Aug. 6, 2019) ("Describing common sense reasoning in a learned way does not turn it into helpful expert testimony.").

trigger. Nor would a thumb safety have prevented the accident if it was not engaged. Although the gun could (according to Plaintiff's evidence) unintentionally discharge from a grazing pass or bump, Plaintiff's experts do not know if that is what happened here. Accordingly, their respective opinions that a manual safety most likely would have prevented the accident are speculative and inadmissible. *See Roe v. FCA US LLC*, No. CIV-19-167-SLP, 2021 WL 2640107, at *13 (W.D. Okla. May 28, 2021), *aff'd,* 42 F.4th 1175 (10th Cir. 2022) (excluding expert testimony that addition of an "out-of-park alarm" in a vehicle would have reduced risk of injury because it was "not supported by any testing or analysis" and "[e]xtrapolating that the addition of another alarm would have reduced or eliminated Plaintiff's injuries goes too far and is inadmissible"); *Taber v. Allied Waste Sys., Inc.*, No. CIV-13-773-D, 2015 WL 1119750, at *8 (W.D. Okla. Mar. 11, 2015) (excluding expert testimony in products liability case because the expert's "theory of causation cannot be tested" and the expert "agrees that it remains a mystery as to how and why Plaintiff fell").

## B.  Motion for Summary Judgment

### 1.  Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.... An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v.*

*Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citing Fed. R. Civ. P. 56(e)).

Importantly, at this stage, the court's role is not "to weigh the evidence and determine the truth of the matter," but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249–52. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## 2. Analysis

The summary judgment dispute in this case boils down to a single element: causation. Defendant argues that summary judgment in its favor is required because Plaintiff lacks admissible evidence of causation, an essential element on each of the claims. Plaintiff does not dispute that causation is an essential element but argues that his evidence is sufficient to create a genuine factual dispute as to causation.

In a products liability case such as this,[5] the plaintiff bears the burden of proving three elements: "the defect must have (1) caused the injury in question, (2) existed at the time it left the manufacturer's control, and (3) made the product unreasonably dangerous." *Braswell v. Cincinnati Inc.*, 731 F.3d 1081, 1085 (10th Cir. 2013) (citing *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363 (Okla.1974). The plaintiff may rely on circumstantial evidence to show causation and "it is not necessary that evidence be so certain so as to support only one probability and exclude all others." *Carver v. Kia Motors Corp.*, No. 10-CV-642-JHP-PJC, 2012 WL 119587, at *4 (N.D. Okla. Jan. 12, 2012) (citing *Dutsch v. Sea Ray Boats, Inc.*, 845 P.2d 187, 191 (Okla. 1992)). However, "the mere possibility that a defect caused the injury is not sufficient." *Dutsch*, 845 P.2d at 191. A finding of liability must "be based upon probabilities, not possibilities." *Id.* (internal quotation marks omitted). Thus, to survive summary judgment, "a plaintiff must provide sufficient evidentiary material which raises a reasonable inference from which the fact finder may rationally conclude that the plaintiff's injuries 'proximately resulted from the product's failure of performance causally related to its defective condition.'" *Smith v. Sears Roebuck & Co.*, No. CIV-04-1271-HE, 2006 WL 687151, at *5 (W.D. Okla. Mar. 17, 2006), (10th Cir. 2007) (quoting *Kaye v. Ronson Consumer Prods. Corp.*, 921 P.2d 1300, 1302 (Okla.Ct.App.1996)) *aff'd,* 232 F. App'x 780.

Claims premised on negligence similarly require "the plaintiff to show…that the negligence was the proximate cause of the injury." *Gillham v. Lake Country Raceway*, 24

---

[5] Because this is a diversity action, the substantive law of the forum state applies. *MTI, Inc. v. Emps. Ins. Co. of Wausau*, 913 F.3d 1245, 1248 (10th Cir. 2019).

P.3d 858, 860 (Okla. 2001). Although a negligence claim may be established by circumstantial evidence, proximate causation "must be based on something more than mere speculation" or the fact that an accident occurred. *Id.* at 861. As the Oklahoma Supreme Court has explained:

> Where one conclusion would be as sound as another, the evidence may then be said to leave the matter wholly within the realm of mere conjecture, and any conclusion would be the result of a common speculation…. An inference of negligence must be based upon something other than mere conjecture or speculation, and it is not sufficient to introduce evidence of a state of facts simply consistent with or indicating a mere possibility, or which suggests with equal force and leaves fully as reasonable an inference of the non-existence of negligence. The inference of negligence must be the more probable and more reasonable inference to be drawn from the evidence.

*Gillham*, 24 P.3d at 860–61 (quotation marks and citation omitted).

Here, Plaintiff has provided evidence that the P320 is defectively designed because it lacks a manual safety. And no one seriously disputes that the discharge in this case was accidental in the sense that Plaintiff did not intend for the gun to fire. But, as explained above, "[i]t is not enough to merely contend that a defect existed, show that an accident occurred, and assume the two are necessarily related." *Beverly v. Wal-Mart Stores, Inc.*, 3 P.3d 163, 167 (Okla. Civ. App. 2000). There must also be some admissible evidence from which a reasonable jury could conclude that this incident was more probably than not caused by the defective product. Plaintiff argues he can make this showing in two alternative ways.

First, he argues that the causation opinions of his experts create a genuine factual dispute as to causation. This argument is foreclosed by the Court's determination that the experts' causation opinions are inadmissible.

Second, he argues that his claims can be proven through circumstantial evidence even without the benefit of expert testimony. Expert testimony as to causation is typically necessary in cases that involve complex issues of design and function. *See Rodgers v. Beechcraft Corp.,* 759 F. App'x 646, 679 (10th Cir. 2018); *Roe*, 2021 WL 2640107, at *14. Here, however, Plaintiff contends that a jury does not need expert testimony to understand that an engaged thumb safety would have prevented Plaintiff's gun from accidentally discharging. That may be, but Plaintiff has not pointed to any evidence in the summary judgment record which would permit the inference that a thumb safety would have been engaged. If anything, the limited evidence on this topic suggests the opposite – Plaintiff testified that he was not thinking about a manual safety even though a P320 with a manual safety was available. There is no evidence in the record that Plaintiff preferred a manual safety, wanted a manual safety, or always used a thumb safety. Without any evidence permitting an inference that a thumb safety would have been used, a finding that the lack of a thumb safety caused the accident is pure speculation – it is possible that it would have prevented the discharge, but equally possible that it would not have prevented the discharge. *See Downs v. Longfellow Corp.,* 351 P.2d 999, 1005 (Okla. 1960) ("[w]here [the plaintiff] relies upon circumstantial evidence to prove causation, the circumstances proved must tend to support plaintiff's theory with reasonable certainty and probability, as opposed to other causal hypotheses.").

As for the tabbed trigger, Plaintiff's admissible evidence is also insufficient to create a genuine factual dispute as to causation. Plaintiff testified that he reached over the gun, grabbed the holster, pulled upward, and then only remembers the gun going off. His

testimony does not indicate what caused the trigger to move[6] or where force was applied. From Plaintiff's testimony, an inference that he inadvertently caused something to push back on the trigger face is equally as valid as an inference that the trigger was grazed. This is not sufficient to survive summary judgment: there must be "evidence of probable causation in order to create a question of material fact that can be presented to a jury" as opposed to the mere possibility of causation. *Carver v. Kia Motors Corp.*, No. 10-CV-642-JHP-PJC, 2012 WL 119587, at *5 (N.D. Okla. Jan. 12, 2012).

Although Plaintiff has presented a theory of possible causation, there is not sufficient evidence from which a jury could rationally conclude that the gun's alleged defect – the absence of a manual safety – caused the injuries in this case. *See Rodgers*, 759 F. App'x at 679 (affirming summary judgment because plaintiff "had no admissible expert testimony linking the loose screw to electric intermittency or voltage issues"); *Taber*, 2015 WL 1119750, at *10 (granting summary judgment in negligence case where the plaintiff did not know what caused his fall and expert causation opinions were excluded); *Carver v*, 2012 WL 119587, at *5–6 (granting summary judgment on products liability case because plaintiff only presented "a theory of *possible* causation" and failed to show that a purported defect caused the injuries) (emphasis in original); *Smith*, 2006 WL 687151, at *4 (granting summary judgment in products liability case where expert causation opinions were inadmissible and the plaintiff offered "no evidence which would permit a rational trier of

---

[6] Recall that Plaintiff's design expert indicated that the trigger must actuate for the gun to discharge.

fact to conclude that the accident which occurred in this case was the result of a defectively designed opener").

Although the Court is sympathetic in regard to the significant injuries Plaintiff has suffered, the Court finds summary judgment in favor of Defendant is proper on the issue of causation.

## CONCLUSION

As set forth above, Defendant's Motion to Exclude Causation Evidence and Opinions of Plaintiff's Expert William Vigilante [Doc. No. 73], Motion to Exclude Causation Evidence and Opinions of Plaintiff's Expert James Tertin [Doc. No. 74], and Motion for Summary Judgment [Doc. No. 71] are GRANTED. A separate judgment will be entered.

IT IS SO ORDERED this 8th day of September 2023.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**